Good morning. My name is John Lambrose. I'm here on behalf of Mr. Davis. I would like to reserve about a minute or two of my time for rebuttal, and I'd like to thank the Court for allowing me 20 minutes in this case. I think I'd like to begin my the implications of Mr. Davis not getting a separate penalty phase hearing and the how that was exacerbated by the bad clemency instruction and so on. But can I just cut to it? For me, it's a central issue there. A trial combining the guilt and penalty phase has been held constitutional. Isn't that correct? In a non – when death is not sought. All right. So death was not being sought. Right. So that's – once you say that's constitutional, of course there's going to be a dilemma for the defendant. Is he going to try to mitigate things so he won't receive a very harsh penalty? Or is he going to try to be acquitted? And how can you avoid that? Well, I think that if you begin – if your major premise in that syllogism is that it's a – that it is never unconstitutional, that's flawed. That's right. Do you have a Supreme Court case saying it is? I think that – I mean, we're in a very tight area. You've got to find a Supreme Court case that says it's unconstitutional. I don't believe you have one. I don't have a Supreme Court – Well, don't speculate, then, because that's the standard we're applying. But what I do have is a Supreme Court case and several Supreme Court cases that say if state law is unclear, if state law suggests that you do have a right in a non-death prosecution to a separate hearing, then you very well may implicate the Constitution. Not in the context of pure Furman v. Georgia. You must have a separate penalty hearing in front of a separate sentencing body. But if you look at what happened in Nevada, and the argument that we made, both in the district court and on appeal, is that it implicates the 14th Amendment right to a liberty interest in a separate penalty hearing because of Nevada law. If you look at the statute that was in effect at the time, 175.552, that statute suggests that you, even if you're being prosecuted and the penalty that you can receive is only life without, you get a separate penalty hearing. But then – And McCabe – Here's the difficulty I have, and that is the Nevada Supreme Court. Right. So – or the difficulty you have, or we all have to figure out. You have statute. Then you have the Nevada Supreme Court that, as I understand it, basically says that only applies in the case of death penalty. So if you take your AEDPA standard and you trace it back to your state law as interpreted by the Nevada Supreme Court, how would we possibly rule any differently than the Nevada Supreme Court if that is the state law? Well, see, with all due respect, I think if you read McCabe, the 1982 decision that construes this statute, if you read McCabe carefully, and believe me, I did – I'm sure. It says – it says, and I'm familiar with the McCabe case because a friend of mine actually represented Mr. McCabe back in Douglas County when I was a young lawyer in Carson City. The McCabe holding is extremely narrow. What it says is, under the circumstances of this case – now, unfortunately, the McCabe decision itself does not talk about what the facts were, but – and this is – I think this addresses your concern, Judge Noonan. I am not asking for some broad constitutional holding here. The decision that this court could make if I were to – if I were to prevail on this point and this point alone would be extremely narrow because what happened here was that Mr. Davis was – Mr. Davis's lawyer, and he told the sentencing judge this when they were settling instructions, is don't put me – don't make me make this Hobson's choice. Guilt is a critical stage. Penalty is a critical stage. He's entitled to my representation at both stages. If I choose to represent him at guilt, then he is not being represented at penalty. And that implicates – That's the way it's set up. And that's – well, but that implicates – Where does the United States Supreme Court say that's a violation of anybody's liberty? United States v. Simmons says that you should not have – it is intolerable that one constitutional right should be surrendered to assert another. And we're talking about the right to counsel here. And we're – this implicates Cronick. It implicates Simmons. Cronick says that if counsel abdicates, if there is no counsel representing somebody at a critical stage, no – if there is no lawyer putting the – putting the test – putting the government to the – to its test, then that is reversible error. Well, that's reversible error. But there is a lawyer. But the – but the lawyer didn't do anything. No, the lawyer is making a strategic choice. He's got to go for acquittal. That can't be – Now, on those facts, he might very well have said it's hopeless, I'll try to mitigate. But he didn't. But that's a choice he cannot make. That's a choice – because when you make a choice not to represent, that cannot be – that cannot be construed as strategic. You're dividing up – he's got one client, one trial, and he makes the best choice he can as to what – how that trial should be handled. Well, but he makes that existential choice, but it's not a constitutional choice. I just cannot – and again, please, I don't mean to – to mischaracterize my argument as coming under Furman, because really the argument is more discreet than that. We're talking about a liberty interest, an almost substantive due process interest under the 14th Amendment to a penalty hearing. And so you set that aside. That's sort of the – that's the argument that he has this right. And then you compound it with the fact that he has this right under Nevada law. Because if you look at McCabe, there's nothing in McCabe that tells us that the defense in McCabe was all or nothing. Well, no, but let me read you from McCabe, because obviously I don't have a friend who was counsel, but I did read the case. Yes. And at the very bottom it says here, a plain reading of the statute in conjunction with the other Nevada statute outlines the procedures for conducting a separate penalty hearing. Reveals that a separate penalty hearing is not required where death is not an option for the jury to consider. I don't know how it could be any clearer for us than to say that if you have a non-capital case, a separate penalty hearing is not required. But see, what Nevada – what the Nevada Supreme Court was doing, and I think that this is definitely – and having practiced in front of that court for 23 years off and on, I think this is a very reasonable inference to draw from what happened in McCabe. What the court was saying is under – and if you read that quote that you just gave, Judge McKeown, I think is preceded by under the circumstances of this case. And what I glean from that is if you are not rolling the dice, as Judge Noonan said, going all or nothing, and perhaps your defense is voluntary manslaughter or, you know, second-degree murder. I did not have premeditation and deliberation. You can. You can with some sense and without some confusion, without looking silly, make a mitigation argument. You can make that constitutional pivot, if you will, and then argue mitigation to the jury. I'm saying that you cannot – you cannot argue mitigation to the jury if you're saying I did not do it. I mean, I understand. It just doesn't – I mean, I understand the internal conundrum for the trial lawyer. But even though it says under the circumstances we don't agree, but then they go on to say they interpret the statute under a plain reading of the statute. And I just don't see how this court can read that any differently than in plain English like the Nevada court stated it. So then we're back to the original question, which is is there a U.S. Supreme Court case that holds that there is a constitutional right? And I don't know of such a case unless we've missed it. No, no, there is not. And I don't mean to suggest that there is. There is no Supreme Court case that says that. I think we're all appreciative of the difficulty. Right. But I don't see a legal path to resolve the difficulty given that you're kind of bookended by the Nevada Supreme Court and the U.S. Supreme Court. Well, let me just make this point then. McCabe comes down in 1982, and Mr. Davis goes to trial in the fall of 1986. Several years, and then his case is affirmed on appeal, I believe, in close to 1989 or 1990. In 1992, there's a case that comes down called State v. Kaslan, K-A-Z-L-Y-N. And in Kaslan, what the Nevada Supreme Court was faced with was, and this is very odd, and I apologize because I didn't cite it in the brief, but I think it speaks to what you're asking, Judge McKeown. Kaslan came to the court under the posture where the defendant got a penalty hearing, a separate penalty hearing, and he complained. He said, I shouldn't get a separate penalty hearing. And that suggests to me, and again, having practiced in Nevada, I can tell you that there was a lot of confusion until the statute was changed in 1993, another point that I'd like to make. There were judges around the state of Nevada that were reading that statute, notwithstanding McCabe, to suggest or to order a separate penalty hearing in a non-death setting. Well, what the Nevada Supreme Court did in Kaslan in 1992 was say, no. You know, it's, you know, from now on, here's what it is. You shouldn't be getting a separate penalty hearing. Okay? And then the legislature changed the law. My point is this. So Kaslan is consistent with McCabe. Kaslan is consistent with McCabe. But my point is there was confusion. There was confusion among the district court judges with regard to what McCabe meant. And that finally came to the Nevada Supreme Court again in 1992, and then the legislature, I think, made a constitutional clarification. So my point is, and again, I think when I get to the bad clemency instruction, maybe my point will be more compelling. But my point is that under the state of Nevada law at the time that Mr. McCabe went to trial, not with or excuse me, Mr. Davis went to trial, notwithstanding the holding in McCabe, he was entitled to a separate hearing because he did not fit within the circumstances of the McCabe case, i.e., Mr. Davis had to make the Hobson's choice that Mr. McCabe, I guess, did not have to make. And that's my point. And that's why I think that if you look at this case as a case of fundamental fairness under the due process, under substantive due process, and the fact that his liberty interest was implicated because he didn't get a separate trial and his separate penalty hearing and his Sixth Amendment right to counsel was implicated, you have a confluence of those constitutional rights that result in his having been treated, you know, not getting a sentencing hearing, having been unconstitutional. Now, that error He went to trial in September of 1986. Thank you. Uh-huh. Now, here's where I really think you kind of put the icing on this cake. If you assume for the sake of argument that the trial judge followed Nevada law and it was not unconstitutional, wasn't a violation to do, you know, everything at once, then I think that there is, and I don't concede that, I think that there is still constitutional error when you look at how the jury was instructed with regard to clemency in Nevada. That was clearly an erroneous definition of State law. And I would just cite the Court to jury instruction number 16. It's in the excerpts at page 515 and in my opening brief at page 28. It did not advise the jury pursuant to the Petrucelli instruction that had come down a year earlier, the Nevada Supreme Court's instruction that tells a jury, you cannot speculate with regard to what life without possibility of parole means. Okay? That's just something you can't speculate. Yes, there is a board of pardons and parole, and they can possibly commute it, but you can't speculate. Now, that instruction was not given. That instruction was the instruction that had to be given under Nevada law. It was not given. That problem was then exacerbated when the prosecutor stood up in front of the jury during closing argument and said, life without possibility of parole does not mean life without possibility of parole. I'm reading from my opening brief at page 29 and excerpts at page 586. Now, that is a clear misstatement of Nevada law, because Nevada law says life without possibility of parole means exactly what it says. So you have the prosecutor saying it doesn't mean what it says to the jury. Okay? Then you have the prosecutor telling the jury, the instruction tells you that the state board of pardons commissioners can review any sentence at any time at the request of the defendants and modify that back and give him parole. That is absolutely a misstatement of Nevada law as it existed then and as it existed now. Because I can tell you right now, having represented many people in front of the pardons board in the state of Nevada, Mr. Davis. How did the Nevada Supreme Court handle that issue? The Nevada Supreme Court did not. This is a situation where the Nevada Supreme Court decided this question on procedural grounds, but Judge Reed, the federal district judge below, reached the issue on the merits. So we do not have a merit. And concluded what? I'm sorry? And concluded what? And concluded that it was not a violation of the Constitution. Judge Reed. I thought the Nevada Supreme Court didn't get to it because the evidence of guilt was overwhelming. No. The Nevada Supreme Court. I just want to make sure I have this correct. The Nevada Supreme Court, Judge Wallace, held that since the defendant did not ask for this, for the correct clemency instruction at trial, the issue was not. So I'm talking about the prosecutorial misconduct. Oh, the prosecutorial misconduct, yes. That's the issue you were on. Judge Reed reached that issue. Well, I'm sort of, it's kind of a. Could you start with the Supreme Court of Nevada? How did they handle the prosecutorial misconduct issue? The Supreme Court of Nevada handled the prosecutorial misconduct issue. I have. I just want to make sure I have this right. I believe what they decided, and I have the opinion here just to make sure, but my notes tell me that they did not find. First of all, they reviewed it for plain error under Nevada law, and they did not find that there was plain error with regard to the prosecutorial misconduct. And what Judge Reed did is he reviewed it under Darden v. Wainwright and found that, in other words, he reached the merits of the claim under the federal test and found that there was not substantial and injurious effect on the jury's verdict under Brecht. But my point is that you have a bad jury instruction, then you have the prosecutor misrepresenting the state of the law, and then you have a jury note that comes out. Now, that was the next point I was going to make that really underscores the prejudice. You have a jury note that comes out where the jury is confused, and they want to know, they ask, do lines 6, 7, and 8 from the erroneous instruction, and those lines are, under the laws of the state of Nevada, any sentence imposed by the jury may be reviewed by the state board of pardon commissioners. The jury's first question is, do these lines apply equally to either sentence? The answer would have been yes, because the board of pardons commissioners has jurisdiction over both. Does the parole board review sentences in either case? The answer to that would have been no. The parole board cannot review a life without possibility of parole sentence, obviously. And is there a minimum time served in each case? And the answer would have been ten years if you have life without the possibility of parole. But the answer to that is a little more complicated in a life without the possibility of parole. First of all, you have to get your commutation. You have to go to the pardons board, and the pardons board has to say, you are now going from life without to life with. Then under Nevada law, if that happens, and believe me, that does not happen very often in Nevada, then under Nevada law, under NRS 213-1099, subsection 4, the parole board will not hear a parole for somebody who has received a commutation for 20 years. But they still review it, is that correct? The parole board has to have a hearing in that 20-year period. But my point is, Mr. Davis is... So eventually the person could be released. Oh, yeah, if there's a, you know, I mean, if miracles happen. How is this inaccurate? Well, because... It doesn't spell it all out. Well, because the prosecutor absolutely, it was totally inaccurate, because, first of all, he says life without does not mean life without. It doesn't if it's a procedure for getting out. But Nevada law says it does. When you instruct a jury... But the procedure you've just shown doesn't let the person out, even though they're sentenced for life. But then when you couple that, now, if you look at California v. Ramos, you can certainly instruct on the availability of clemency, but it's got to be accurate. You know, the jury cannot be confused by this. The jury in this case was asking the correct questions. The jury was wondering about this. They were not told what I've just explained to this court. They deliberated for 13 hours, Judge Noonan. They sent this question out. Their only two choices were life without and life with. We're talking about a guy whose only prior conviction was a DUI, 32-year-old man who had lived in this little town of Ely, Nevada, his entire life, 12 years. He wasn't employed at the time, but he'd been employed for 12 years. He had three children. I mean, the jury didn't hear any of this. The jury didn't even hear an allocution. They heard nothing. And that they were concerned. They sent questions out. They were concerned about what is the difference between life with and life without. And they were told by a prosecutor they were misrepresented. Excuse me. The law was misrepresented to them. Davis's lawyer asked for an interpretation, a jury instruction interpretation. Did Mr. No, he did not. But the jury instruction was correct? No, the jury instruction was inaccurate. The jury instruction was inaccurate. It was not consistent with the Petrucelli instruction under Nevada law. And if you look at the evidentiary hearing where the lawyer was asked these questions, he basically fell on his sword. He said, you know, I didn't know about Petrucelli at the time. I was just going to go by with whatever Judge Merlin Hoyt's stock instructions were. I noticed my time is up. Time is up. We'll hear from Nevada. May it please the Court. John Warwick with the Attorney General for the State of Nevada. The issues that the Court's focused on so far regarding the alleged requirement for a separate penalty hearing, the Court has well noted that McCabe is an unambiguous case stating that where the death penalty is not required, a separate penalty hearing, or where the death penalty is not going to be imposed, a separate penalty hearing is not required. And I'd also like to point out that there is no Supreme Court case that would require that. Therefore, the determination in Nevada by the Nevada Supreme Court that this particular ground was denied, it's not contrary to warrant or an unreasonable application of the laws or Constitution of the United States as determined by the U.S. Supreme Court. The choice that the defense attorney had to make in this was what kind of defense was he going to present, and he presented a theory that this was a suicide. And that was the choice that he made. The fact that in hindsight maybe something else could have been done doesn't mean that the ineffective assistance of counsel issues, which were also raised by the appellant, or the lack of a separate penalty hearing, none of this violates the Constitution in the State's view. The fact that the trial took place in 1986, that was a correct statement of the law under NRS 175.552 at that time. The fact that the law was changed later does not affect the fact that it was a correct statement of the law at that time in 1986. In regards to the clemency instruction issue, that is, once again, this is a case that does not involve a death penalty. And the fact that a jury note came out during deliberations, I think that would lead to speculation as to what the effect of that may have been. I don't think that it raises to a level that violated the Constitution. It's a question of State law, and once again, this was not a death penalty case. Some of the other areas that I'd like to address include the procedural default. Before you move off the merits, would you address the prosecutor's argument more specifically and whether he misstated the law and whether that, coupled with the instructions, would lead or mislead the jury? I think the prosecutor's statement, when one views the trial as a whole, was a small enough error that it did not infect the entire proceedings. I don't think that that statement by itself would lead a jury to apply the instructions in a way that violated the Constitution, when you look at the case as a whole. I'm still a little confused how it was handled by the State court. Counsel says that it was decided by the Supreme Court of Nevada on the basis of there not being plain error. I had, from reading the briefs, and I didn't follow it through because I thought there was no issue on it, that the Supreme Court decided on the basis that evidence of guilt is overwhelming. In fact, how did the Supreme Court handle the alleged prosecutorial misconduct? In the State's answer brief, we noted that the jury instruction on parole given to Davis's jury was not an inaccurate statement of the law at the time, except for the record at 1543. I would need to check that to be sure, Your Honor. Do you have a citation to the record that I can check? It's on page 18 of the State's answer brief, except for the record at 1543. Once again, I would have to check that to be sure. Thank you. Some of the other issues that were raised involved procedural default, and the State's position is that the grounds 7J through 7X, 8, 9 of the Second Amendment petition were properly barred from federal review because there is an adequate and independent ground that bars the review. The specific State procedural bars are NRS 34802, which has been upheld in Moran, NRS 34.810. Some of these particular subsections have not been deliberately or have not been specifically upheld by this Court, but I think there's a consistency in non-capital cases, and there's a line of cases with Moran, Vargas, Valerio, and Vang, and non-capital cases that these particular types of procedural bars have been upheld and they are independent and adequate to bar federal review. There's also an issue that was granted, whether the district court erred in denying Davis's request for an evidentiary hearing to address the issue of procedural default. In this case, I don't believe that there was ineffective assistance to counsel. There's no prejudice. The evidence in this case is overwhelming. The statements made by Mr. Davis were that, well, yes, got into a bit of a fight with my girlfriend, but we then had sexual relations, kind of a make-up thing. I had been drinking, and when I woke up, I found the gun on the counter in my trailer, but her body was found in my pickup truck. And his theory was that this was suicide. Now, the record shows that the wound inflicted on the victim in this case went through the chin and up through the top of the skull. Anyone who had done that to themselves would have been either killed instantly or unable to do anything, such as to go from the pickup truck, which is where the evidence shows where the shooting took place, to put the gun back on the counter of the trailer. And Mr. Davis said this a couple of times. So with that kind of prejudice stacked against him, I don't think that the ineffective assistance to counsel claim here stands, and therefore it cannot stand to generate cause to allow procedural default to not be imposed. Could I ask you a question? This has not been argued, and it may not be important to our decision, but there seems to be a difference in a point of view and not a curiosity. I think I'd better ask it now. And that has to do with the polygraph evidence. As I read your brief, you defend the polygraph evidence on the base that Davis had put into evidence that he wanted to polygraph, and the state was just painting the full picture. The great brief states that that's not true, that it was the state that wanted to enter the exhibit. Now, so that I don't have to read the whole record to find out which is accurate, can you tell me what happened on the polygraph evidence? In terms of the videotape, the state moved to introduce it. If I mischaracterize that, I apologize. However, that was something that was once again part of the defense's theory because they wanted to show that Mr. Davis was cooperating with the investigation and by allowing or by the introduction of the videotape, that would allow that information to come before the jury, but then Mr. Davis would not be subject to cross-examination. I think that was the purpose of that. So what happened? What was actually admitted into evidence? The videotape was admitted into evidence, and it was shown to the jury. And also the detective was questioned. Yes. Correct? By the prosecution. Yes. And what was the objection made by Davis to that? I would need to refer to the record, Your Honor. Okay. I guess I'm going to have to read it. Thank you. If there are no further questions, I would submit that the U.S. District Court was correct when it denied the petition for Ruta Habeas Corpus and that there was no violation of federal constitution and state law by the Nevada courts. Thank you. Thank you. Mr. Mando, you did go over, but you may have a minute for rebuttal. Thank you. I think I can clarify a couple of points. First of all, just with regard to the videotape and the polygraph evidence, the counsel was correct. The videotape was proffered and introduced by the state, and the videotape showed Mr. Davis saying that he would take a polygraph, just put me on a polygraph, that kind of thing, and then he changed his mind once he was advised by counsel. What happened at trial was Detective Collins referred to it after the videotape was played, and then the prosecutor referred to it in closing. It was not objected to by Davis's lawyer. Counsel is absolutely correct. Davis's lawyer, and this is expanded on during the evidentiary hearing on the post-conviction, ineffective assistance of counsel claim, he decided that that was going to be consistent with his theory, what he did of suicide without having to put Davis on the stand. What he did not do is move to redact the discussion of the polygraph evidence. Judge Wallace, I think I can clarify the question you had with regard to the prosecutorial misconduct in connection with the clemency instruction. What happened was the way it was briefed on direct appeal to the Nevada Supreme Court after the conviction, the counsel for Mr. Davis included within his bad ñ within her bad clemency instruction assignment of error, the ñ it was ñ she just kind of like wanted to kind of put icing on the cake by talking about how the prosecutor exacerbated that problem by, in his closing arguments, referring to the statements that I made. And that's in the excerpts of record at page 561 to 605. So it was kind of folded into ñ that misconduct was folded into the bad clemency argument. And the Nevada Supreme Court did not reach that issue. What they said was since trial counsel did not ask for an instruction at trial, it was not preserved. So the court didn't get to that. And the Nevada Supreme Court opinion is pages 693 to 696 of the excerpts of record. Thank you. I hope that clarifies. Your time has expired. The case of Davis v. Ignacio is submitted. Thank you. And we'll take a short break. The counsel in United States v. Meek can come up and be ready to argue when we return in five minutes. Thank you. All rise. This court is now in recess for five minutes.
judges: Wallace, Noonan, McKeown